**Richard A. Madsen, Jr. (SBN 146174)**
**MADSEN LAW FIRM**
**1600 South Main Street, Suite 375**
**Walnut Creek, California 94596**
**Telephone: (925) 974-0800**
**Facsimile: (925) 974-0888**
**Email: Rick@MadsenLawFirm.com**

**Attorney for Plaintiff,**
**J.P.**

**UNITED STATES DISTRICT COURT**

**IN THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **J.P.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**UNITED STATES OF AMERICA;**<br>**UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS,**<br>**an entity of the government;**<br>**BUREAU OF PRISONS DIRECTOR MICHAEL CARVAJAL,**<br>**in his official capacity;**<br>**MDC WARDEN W.Z. JENKINS, II,**<br>**in his official capacity;**<br>**OFFICER JOSE VIERA, in his individual and his official capacity; and DOES 1-100,**<br><br>**Defendants.**<br>**______________________________/** | **Case No.: 2:25-cv-10783**<br><br>**COMPLAINT FOR DAMAGES;**<br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, J.P., by and through her attorney of record, Richard A. Madsen, Jr., Esq., and for her Complaint herein against Defendants, the United States of America (USA), the United States of America Federal Bureau of Prisons (BOP), Michael Carvahal (former BOP Director); W.Z. Jenkins, II, (former Warden of the BOP Metropolitan Detention Center/MDC), and Officer Jose Viera (former BOP Corrections Officer); and DOES

1-100, individually, and in their official capacities as sworn peace officers; and does hereby state and allege as follows:

**COMPLAINT AND JURY DEMAND**

1. This action for damages arises under Title 42 U.S.C. §1983, the United States Constitution, the laws of the State of California, and common law principles. Plaintiff lodges multiple claims herein against Defendants, including, but not limited to, substantive due process and civil rights violations of 42 U.S.C. §1983; as well as a variety of other causes of action (sexual battery, negligent supervision, deliberately indifferent policies and training, and intentional infliction of emotional distress, et al.). Plaintiff demands a trial by jury against the Defendants named herein.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction in this lawsuit because it concerns violations of federal law, involves diverse parties, and requires redress of events and deprivation of rights under color of law in the State of California, United States of America. An actual and present controversy exists between the parties under the meaning of 28 U.S.C. §2201(a). The Court has jurisdiction over this action pursuant to 28 U.S.C. 1331, 1332, and 1346(b). Plaintiff further invokes the jurisdiction of this Court under 28 U.S.C. §1367 to hear and adjudicate state law claims.

3. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred within Los Angeles County, which is within the above-captioned judicial district.

4. There is no other yet pending or related civil action between these parties arising out of the same occurrence as alleged in this Complaint, nor has any such action been previously filed and dismissed or transferred.

5. All statutory claims requirements and administrative remedies have been met and exhausted as a condition precedent to the filing of this action. In compliance with the Federal Tort Claims Act, 28 U.S.C. §§1346, 2671, Plaintiff filed an administrative claim for damages with the Federal Bureau of Prisons, U.S. Department of Justice, which claim was

initially acknowledged as received on December 7, 2021, and further acknowledged in multiple subsequent communications, but the claim has not been accepted, rejected or denied. Pursuant to 28 U.S.C. §2675(a), Plaintiff now considers the failure to act as a final denial of her claim and proceeds with this filing.

**PARTIES**

6. Plaintiff is, and at all times herein mentioned was, an individual female and a citizen of the United States residing in the County of Los Angeles, State of California. At all times herein mentioned, Plaintiff was incarcerated at the Metropolitan Detention Center (Federal Bureau of Prisons), and at all times material to this action, Defendants had total and complete custodial control of Plaintiff, and were entirely responsible for Plaintiff's safekeeping, care and protection. Plaintiff is a woman and a "person" within the meaning of 42 U.S.C. §1983.

7. Defendant United States of America is a governmental entity and is an appropriate defendant for Plaintiffs' claims. Defendant United States is vicariously liable for the acts and omissions of its employees under California's *respondeat superior* principles. At all relevant times, officer(s) were acting within the scope of their employment. Their acts and/or omissions are engendered by their work and are a generally foreseeable consequence for their employer. During the relevant period, the United States, through BOP, a federal agency, was in possession and control of Metropolitan Detention Center (MDC), a federal prison located in Los Angeles, California. The United States has waived sovereign immunity as to certain claims, including the claims set forth herein, and is liable for the hiring, retention, training, supervision, management, discipline, and conduct of all BOP personnel, pursuant to FTCA, 28 U.S.C. §2674. This Defendant is also the employer of any and all individual Defendants and is a proper entity to be sued under 42 U.S.C. §1983.

8. Defendant, United States of America Federal Bureau of Prisons (BOP), is an appropriate defendant for Plaintiff's claims. During the relevant period, BOP was in possession and control of the Metropolitan Detention Center (MDC), headquartered in Los Angeles, and a division of the federal government in charge of the safety and security of persons in custody

and housed in federal correctional facilities. BOP is the agency and public entity responsible for the events which give rise to this Complaint. This Defendant is also the employer of any and all individual Defendants and is a proper entity to be sued under 42 U.S.C. §1983.

9. Defendant Michael Carvahal, sued herein in his official capacity, was at all times herein mentioned, a sworn peace officer and the Director of Defendant BOP. Director Carvahal had and did possess the responsibility, supervisory power, and authority for the planning, establishment, adoption, facilitation and training on all policies and practices affecting the operation of the BOP and was responsible for enforcing the rules of the BOP and ensuring its personnel obey the Constitution and United States federal laws.

10. Defendant W.Z. Jenkins, II, sued herein in his official capacity, was at all times herein mentioned, a sworn peace officer and the Warden of Defendant BOP's Metropolitan Detention Center. Warden Jenkins had and did possess the responsibility, supervisory power, and authority for the planning, establishment, adoption, facilitation and training on all policies and practices affecting the operation of the BOP and was responsible for enforcing the rules of the BOP and ensuring its personnel obey the Constitution and United States federal laws.

11. Defendant Jose Viera, ("Viera"), sued herein in his official capacity and in his individual capacity, was, and is at all times herein mentioned, a sworn peace officer, and a BOP Corrections Officer, and a "Unit Officer," who at all times herein mentioned was on official duty in his position of employment with BOP, acting within the scope of his official employment, and/or with the BOP's permission and consent and under color of federal law.

12. The true names and capacities, whether individual, corporate, associate, agent, or otherwise of other Defendants designated as "DOES" are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a "DOE" is legally responsible for the events and occurrences referred to herein, thereby causing the injuries and damages as herein alleged. Plaintiff prays leave to amend this Complaint to include their true names and capacities when the same can be ascertained and to include appropriate allegations.

13. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants and each of them, were the agents, servants, and employees of the other Defendants; that Defendants, and each of them, were at all times mentioned herein acting within the course, scope, purpose and authority of said agency and employment; that Defendants, and each of them, in doing the things alleged herein were acting with the full knowledge, permission and consent of each of their co-Defendants and co-conspirators, and that Defendants, and each of them, are responsible in some manner for the events and happenings herein.

## FACTUAL BACKGROUND

14. Plaintiff has previously suffered from addictions and committed non-violent crimes which resulted in a criminal conviction. On July 29, 2020, Plaintiff was sentenced to a term of 33 months imprisonment and taken into the custody of the Federal Bureau of Prisons. At that time, she was housed at the Metropolitan Detention Center Los Angeles (MDCLA). As such, plaintiff was an inmate under the complete control, care and custody of BOP in October 2020, when there was a massive COVID-19 outbreak. On December 19, 2020, Plaintiff was notified that she had tested positive for COVID-19 and was sent to isolation.

15. Plaintiff was the only inmate in the isolation range/area, with nothing but empty cells around hers; it is believed that the area was equipped with camera monitoring equipment, which footage Plaintiff has not seen, but for which preservation by the Department of Justice has been requested.

16. Plaintiff, due to COVID-19 illness and through no fault of her own, was placed in isolation by BOP and/or its agents, and was totally separated from all other inmates and BOP staff. Plaintiff was under the complete care and custody, and the total control, of BOP and specifically, of the Unit Officer, Defendant Jose Viera.

17. Upon being moved to isolation on December 19, 2020, Plaintiff asked Officer Viera if he would relocate her due to a leaking toilet; his response was to inquire what she would be willing to do for the cell move. Viera then put his hand inside Plaintiff's shirt and

grabbed her breasts, then moved his hands inside her shorts, and touched her vagina. After touching Plaintiff, he then told her to pack up and move to the cell next door.

18. The next morning on December 20, 2020, Plaintiff was still in isolation, and sleeping on her bunk. She was extremely sick and highly symptomatic with COVID-19, suffering a high fever and whole-body aches, a bad headache, an excruciating sore throat, and shortness of breath. Viera opened Plaintiff's cell door, came into the cell, walked up to the bunk, and told Plaintiff to turn around and scoot over. Plaintiff was confused and disoriented, unsure whether Viera was being serious, and asked him to leave. Viera said he was not playing around and directed Plaintiff more firmly to turn around and scoot over before climbing into the bunk with her. Plaintiff was sick, vulnerable, and terrified as Viera then began to fondle her, undress her, vaginally rape her and pin her against the wall with his body. Viera then brutally sodomized Plaintiff.

19. After Viera ejaculated inside of Plaintiff's anus, he got off the bunk and grabbed a towel hanging nearby to clean off his pants because he had gotten semen on them. Viera's semen was also left on the bunk sheet.

20. Plaintiff then asked Viera to unlock the cell door, under the guise of needing to retrieve an item in her previous bunk, but hoping that walking out of her assigned cell would place her within the camera's view to alert someone's attention. Unfortunately, no assistance came, and she was returned to her cell and locked back inside by Viera.

21. The next day, on December 21, 2020, Plaintiff remained sick in isolation, when Viera again returned to her cell. On this occasion, Viera threateningly exposed his penis to Plaintiff and pushed it in her face. With no options, and knowing what Viera was capable of, Plaintiff felt forced to comply when he instructed her to "suck it." Plaintiff was feverish and ill with COVID-19, still in pain from the rape and sodomy inflicted by Viera the day before, humiliated, alone, and had no defenses as Viera made her perform oral sex.

22. Later that day, another cellmate was ultimately placed in Plaintiff's cell due to a positive COVID-19 test, which put a stop to the assaults by Viera.

23. The next morning, Viera brought clean sheets to Plaintiff, and asked her for the soiled ones. Plaintiff lied to Viera about the sheets, as she had already cut away the soiled portion of the sheet, hiding it to preserve for submission later as physical evidence of the rape.

24. Plaintiff knew that Viera was a sworn correctional officer, a Unit Officer, and an authority figure, and it was well understood in the MDC environment that these types of things regularly occurred. Plaintiff had previously witnessed other instances between inmates and officers often resulting in assaults, retaliation, false accusations and additional charges. In the days that followed, Plaintiff understandably felt unable to immediately report Viera's sexual attacks, as she quietly suffered through the unimaginable violations, and the physical and emotional aftereffects thereof. As was well-articulated on appeal in a similar matter (*J.K.J. v. Polk County, Wisconsin, 960 F.3d 367 (7th Cir. 2020)*) ". . . it is difficult to conceive of any setting where the power dynamic could be more imbalanced than that between a male guard and a female inmate."

25. Weeks later, once Plaintiff was transferred from MDC to another facility (the now-closed FCI-Dublin facility, which has suffered from its own reputation and substantial documentation of inmate abuses and horrors), she reported the assault to a BOP lieutenant, and was subsequently contacted by a representative of the Department of Justice – both of whom were dismissive, treating Plaintiff with skepticism and disbelief, adding to her psychological distress. It was not until the physical evidence of the soiled sheet was produced, and tested, that Plaintiff's claims were believed and Viera's conduct was finally investigated.

26. Plaintiff's horrific experience, and the suffering she endured at Viera's hands, cannot be easily put into words. But aside from the physical wounds which heal after a week or two, the emotional wounds and psychological trauma remain a lifelong battle. Indeed, Plaintiff suffers from flashbacks and nightmares, and has experienced a multitude of symptoms common to survivors of sexual assault: disrupted sleep, shaken sense of security and peace of mind, feeling jumpy, hypervigilant, irritable, angry, and hyper-alert, experiencing rumination, disassociation, depression, an increased need for control, a sense of shame, betrayal, distrust, suspicion, and feeling afraid, all the time.

27. Viera relied on his power over plaintiff, and he calculated and planned his attack on Plaintiff. She was the only female inmate in that range and he took advantage of the opportunity of her isolation. Viera had direct control and authority over Plaintiff, and abused that authority to violate her in the worst way possible. Unbelievably, Plaintiff would later observe Viera to be unaffected; casually distributing breakfast, laughing, joking, and talking with other inmates and fellow officers, like everything was perfectly normal with no care in the world. Viera behaved as if it was a regular occurrence for him to sexually assault and sodomize someone every day. He was not affected or bothered by what he had done.

28. It is established that the sexual abuse of incarcerated people by prison staff constitutes a form of torture that violates the Eighth Amendment. See *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Such abusive sexual contact also violates federal criminal law. *See, e.g.*, 18 U.S.C. §§ 2243, 2244.

29. The Prison Rape Elimination Act ("PREA") of 2003 promulgated and disseminated rules designed to prevent sexual abuse within prison facilities. See 34 U.S.C. §30307. The U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape," and these regulations were immediately binding on BOP facilities.

30. Under PREA regulations, BOP is required to "*train all employees who may have contact with inmates*" on its "*zero-tolerance policy for sexual abuse and sexual harassment;*" prevention, reporting, detection, and response to such behavior; signs and dynamics of sexual abuse in confinement; how to avoid inappropriate relationships with inmates." The training must be "tailored to the gender of the inmates at the employee's facility," and the agency must conduct a refresher training on PREA standards every two years. In off years from the training, "the agency shall provide refresher information on current sexual abuse and sexual harassment policies."

31. Per PREA regulations, administrative investigations of alleged sexual abuse by a staff member staff member or incarcerated person are required to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." Investigators must be specially trained in sexual abuse investigations and must "gather and

preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator."

32. BOP has long failed to adhere to PREA regulations. From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions and failures to act have created an environment that has exposed, and continues to expose, the people in its custody to an unconscionable risk of sexual violence. As a result, sexual assault has remained a serious, systemic problem in BOP facilities, including MDC. For decades, despite a history of audits, reports, allegations, lawsuits, committee reviews and disciplinary processes, significant deficiencies and egregious abuses of incarcerated persons such as Plaintiff continue to remain commonplace. Defendants USA, BOP and MDC officials have been long aware of these problems and have failed to take effective action.

33. On May 16, 2022, according to filed Information and filed Plea Agreement (*United States v. Viera, Case No. 2021R01341; Court Docket No. 2:22-cr-00211*), Defendant Officer Jose Viera, pleaded guilty to one count of violation of 18 U.S.C. §242, "Deprivation of a person's rights under color of law as protected by the Constitution," as a result of his arrest for repeatedly sexually raping and sodomizing Plaintiff while she was under his direct supervision in COVID-19 lockdown isolation.

34. The government's Sentencing Position, which was submitted to the court and filed on March 6, 2023, by the Department of Justice and prosecutors with the United States Attorneys Office, subsequent to Defendant Viera's entry of Plea, contains a clear and succinct summary of outrage:

> "When a corrections officer sexually abuses an individual in his custody, the gravity of his conduct cannot be overstated, particularly because of the coercive nature of the relationship between the offender and the victim. But in this case, there was more than a disparate power dynamic between the perpetrator and victim. Here, J.P. was alone, isolated, and sick with COVID-19 at the height of a global pandemic when other inmates were dying and vaccines were not yet available – and she actively did not consent, letting the defendant know it. These facts make the nature and circumstances of the

> offense particularly egregious and further underscore that there is no way the defendant could have thought J.P. was a willing participant. As part of his guilty plea, the defendant admitted that he raped the J.P, fully knowing that she did not want him to penetrate her anus with his penis. Nonetheless, he did so anyway, putting her in fear of physical harm and in fact injuring her. Then he came back for more the next day. The defendant ultimately tried to cover up his criminal conduct by lying to federal agents…."
>
> "There are no words to aptly convey the depravity of the defendant's conduct and the severe trauma that the defendant caused J.P. Nor is there an adequate sentence that will truly restore J.P.'s sense of safety, dignity, and bodily autonomy which the defendant took when he climbed into her sick bed and anally raped her."

35. Defendant Viera was sentenced on March 20, 2023, to a period of 120 months (ten years) in federal prison as a result of the heinous conduct and sexual abuse he inflicted on Plaintiff, under color of law.

## ALLEGATIONS

36. Plaintiff is a woman and a "person" within the meaning of 42 U.S.C. §1983.

37. At all times hereinmentioned, Viera was employed by BOP, and said agency and employer controlled the officer's daily work schedules, duties, locations, and scope.

38. At all times hereinmentioned, Viera was acting in an official government capacity, clothed with the authority of the BOP, and was acting within the course and scope of his employment with the BOP under the color of law.

39. A "special relationship" was established between Plaintiff and Viera as a result of the nature of the dynamics in their respective positions during events alleged herein – that she was an incarcerated inmate, and he was a sworn correctional officer.

40. On information and belief, sworn BOP Officers regularly commit acts such as the ones outlined within this Complaint.

41. On information and belief, Defendants United States of America, BOP, and the named officials of BOP, were aware that its officers were subjecting incarcerated persons to acts such as those outlined within this Complaint; yet, no action was taken to stop or correct its officers.

42. Plaintiff alleges that USA, BOP, and its named officials herein failed to properly train its officers and/or take action to protect people under its custody and control, and

continues to fail to take action to protect those in its care by preventing and addressing rampant sexual misconduct by his officer employees.

43. Plaintiff alleges that USA, BOP, and its named officials herein failed to monitor and manage its officers to ensure that the rights, privacy, security, and safety of the incarcerated inmates under its custody and control remain uncompromised.

44. USA, BOP, and its named officials herein had supervisory liability in that it had actual or constructive knowledge that its employed sworn officers were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff.

45. Defendants' response to that knowledge was inadequate and reflects deliberate indifference and tacit authorization of these offensive practices. Although written policy prohibits sexual contact between inmates and guards, Defendants have clearly failed to address the prevention and detection of such conduct, and that indifference led directly to the very predictable consequence of the events alleged herein..

46. The misconduct of Defendants, and each of them, violated Plaintiff's civil rights; see 42 U.S.C. §1983 which provides in part:

> *"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state … subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."*

47. Defendants' actions were intentionally carried out with the express purpose of causing Plaintiff to suffer harm, humiliation, mental anguish, and emotional and physical distress. The conduct and actions of Defendants, and each of them, was wanton, reckless, and willful, and were undertaken with reckless disregard and indifference to the rights and interests of Plaintiff, especially in light of the duty of care owed to Plaintiff. Finally, as a direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

///

## FIRST CAUSE OF ACTION

**Cruel and Unusual Punishment; Eighth Amendment**

48. Plaintiff realleges and incorporates herein by reference each and every allegation set forth above.

49. Defendant Officer Viera subjected Plaintiff to serious bodily harm as defined by the Eight Amendment when he sexually assaulted and harassed Plaintiff.

50. Defendants were deliberately indifferent to the substantial likelihood of serious harm to Plaintiff. Defendants knew or should have known that the conduct alleged herein was easily anticipated when plaintiff, through no fault of her own, was placed in out-of-range isolation under the blatantly unsupervised custody, care and control of Viera. Despite that knowledge, Defendants did nothing to prevent the sexual misconduct and rape of Plaintiff.

51. The misconduct of USA and BOP, by and through its agents and employees, violated 42 U.S.C. §1983 which provides in part:

> *"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state … subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."*

52. Defendants' failures and actions as alleged and described herein caused the Plaintiff's physical, emotional, and constitutional harms. Plaintiff has a claim for damages for such violations under ongoing deprivation of rights as provided by the United States Constitution under the Eighth Amendment.

53. This claim for damages is cognizant under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

54. At all relevant times, Defendants were acting under color of law by supervising, disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Plaintiff within the scope of their employment for the United States.

55. Defendants' actions were intentionally carried out with the express purpose of causing Plaintiff to suffer harm, humiliation, mental anguish, and emotional and physical distress. The conduct and actions of Defendants, and each of them, was wanton, reckless, and willful, and were undertaken with reckless disregard and indifference to the rights and interests of Plaintiff, especially in light of the duty of care owed to Plaintiff. Finally, as a direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

56. Plaintiff is entitled to recover damages from the United States and its agents for the wrongful acts/omissions of its employees.

## SECOND CAUSE OF ACTION

### Sexual Assault and Sexual Battery; Cal. Civil Code §1708.5

57. Plaintiff realleges and incorporates herein by reference each and every allegation set forth above.

58. Plaintiff brings this claim against the United States under the Federal Tort Claims Act, based on acts and/or omissions of Defendant United States and Defendant Officers, while working in their official capacities. Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as uniformed federal employees.

59. A person commits a sexual battery when he acts with the intent to cause a harmful or offensive contact with another by use of the person's intimate part, and a sexually offensive contact with that person directly or indirectly results.

60. Officer Viera subjected Plaintiff to sexual acts, with the intent to cause harmful or offensive contact. Such contact with the Plaintiff was deeply offensive to her personal dignity and would be offensive to any person of ordinary sensitivity.

61. Defendants' actions were intentionally carried out with the express purpose of causing Plaintiff to suffer harm, humiliation, mental anguish, and emotional and physical distress. The conduct and actions of Defendants, and each of them, was wanton, reckless, and willful, and were undertaken with reckless disregard and indifference to the rights and interests

of Plaintiff, especially in light of the duty of care owed to Plaintiff. Finally, as a direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct, including psychological trauma, depression, anxiety, loss of dignity and quality of life, as well as physical, emotional and economic injuries.

62. Plaintiff is entitled to recover damages from the United States and its agents for the wrongful acts/omissions of its employees.

**THIRD CAUSE OF ACTION**

**Sexual Harassment; Cal. Civil Code §51.9**

63. Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

64. Plaintiff brings this claim against the United States under the Federal Tort Claims Act, based on acts and/or omissions of Defendant United States and Defendant Officers, while working in their official capacities. Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as uniformed federal employees.

65. Civil Code section 51.9 provides that liability exists in a cause of action for sexual harassment when the plaintiff proves the existence of a special or professional relationship; where the defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe; and where the Plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result of the conduct.

66. A special relationship exists between Plaintiff and Defendants due to the coercive power of the officers' positions; as in all prisons, an extreme imbalance of power is inherent between prison employees and the incarcerated individuals under their complete care, custody and control.

67. Defendants, within this special relationship with Plaintiff, violated Plaintiff's rights when she was repeatedly sexually abused as alleged herein.

68. As a direct and proximate cause of Defendants' conduct, Plaintiff was hurt and injured in her health, strength, and activity, and sustained injury to her nervous system. Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, loss of close personal relationships, disgrace, humiliation, and loss of enjoyment of life, all of which injuries have caused and continue to cause Plaintiff great mental, physical, and nervous pain and suffering. Plaintiff is informed and believes and hereon alleges that those injuries may be permanent in nature. As a further direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

69. Plaintiff is entitled to recover damages from the United States and its agents for the wrongful acts/omissions of its employees.

## FOURTH CAUSE OF ACTION

### Bane Act; Cal. Civil Code §52.1

70. Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

71. Plaintiff brings this claim against the United States under the Federal Tort Claims Act, based on acts and/or omissions of Defendant United States and Defendant Officers, while working in their official capacities. Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as uniformed federal employees.

72. The Bane Act protects individuals from conduct associated with interference with another's civil rights by use of intimidation, threats, or coercion to interfere with rights that are secured by federal or state law.

73. Defendant United States through its agents, servants, contractors, and/or employees violate Plaintiffs' rights, including but not limited to, their right of protection from bodily harm and sexual violation, imposition of punishment without due process, and cruel and

unusual punishment. By violent acts, Defendants, and each of them, did interfere with Plaintiff's constitutional and statutory rights through threats, intimidation, and coercion.

74. As a direct and proximate cause of Defendants' conduct, Plaintiff was hurt and injured in her health, strength, and activity, and sustained injury to her nervous system. Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, loss of close personal relationships, disgrace, humiliation, and loss of enjoyment of life, all of which injuries have caused and continue to cause Plaintiff great mental, physical, and nervous pain and suffering. Plaintiff is informed and believes and hereon alleges that those injuries may be permanent in nature. As a further direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

75. Plaintiff is entitled to recover damages from the United States and its agents for the wrongful acts/omissions of its employees.

## FIFTH CAUSE OF ACTION

### Gender Violence; Cal. Civil Code §52.4

76. Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

77. Plaintiff brings this claim against the United States under the Federal Tort Claims Act, based on acts and/or omissions of Defendant United States and Defendant Officers, while working in their official capacities. Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as uniformed federal employees.

78. Gender violence is defined as acts that would constitute a criminal offense under state law (whether or not charged), which have an element of violence against a person based, at least in part, on the victim's gender, and include a physical intrusion or physical invasion of a sexual nature under coercive conditions.

79. Defendant United States, individually or through its agents, servants, contractors, and/or employees, engaged in extreme and outrageous conduct by subjecting

Plaintiffs to sexual acts while incarcerated. Through the above-described acts and omissions, Plaintiff was a victim of Gender Violence and discrimination, based on her sex and/or gender, when she was repeatedly sexually abused, her body being physically invaded under coercive conditions created by Defendants.

80. As a direct and proximate cause of Defendants' conduct, Plaintiff was hurt and injured in her health, strength, and activity, and sustained injury to her nervous system. Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, loss of close personal relationships, disgrace, humiliation, and loss of enjoyment of life, all of which injuries have caused and continue to cause Plaintiff great mental, physical, and nervous pain and suffering. Plaintiff is informed and believes and hereon alleges that those injuries may be permanent in nature. As a further direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

81. Plaintiff is entitled to recover damages from the United States and its agents for the wrongful acts/omissions of its employees.

## SIXTH CAUSE OF ACTION

### Invasion of Privacy

82. Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

83. Plaintiff brings this claim against the United States under the Federal Tort Claims Act, based on acts and/or omissions of Defendant United States and Defendant Officers, while working in their official capacities. Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as uniformed federal employees.

84. Invasion of privacy is defined when a defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; the intrusion was substantial, and of a kind that would be highly offensive to an

ordinarily reasonable person; and the intrusion caused plaintiff to sustain injury, damage, loss, or harm.

85. While under the complete custody and control of Defendants, and placed into isolation by Defendants, Plaintiff's person was intentionally and substantially intruded upon and invaded, physically and otherwise, when she was repeatedly sexually abused, raped, and sodomized.

86. Such intrusions were substantial and highly offensive to an ordinarily reasonable person due to their sexual and degrading nature. Defendants, and each of them, engaged in fraud, oppression and/or malice and in conscious disregard of the rights and safety of others. Defendants' actions were intentionally carried out with the express purpose of causing Plaintiff to suffer harm, humiliation, mental anguish, and emotional and physical distress. The conduct and actions of Defendants, and each of them, was wanton, reckless, malicious, purposeful, and willful, and were undertaken with reckless disregard and indifference to the rights and interests of Plaintiff, especially in light of the duty of care owed to Plaintiff.

87. As a direct and proximate cause of Defendants' conduct, Plaintiff was hurt and injured in her health, strength, and activity, and sustained injury to her nervous system. Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, loss of close personal relationships, disgrace, humiliation, and loss of enjoyment of life, all of which injuries have caused and continue to cause Plaintiff great mental, physical, and nervous pain and suffering. Plaintiff is informed and believes and hereon alleges that those injuries may be permanent in nature. As a further direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

88. Plaintiff is entitled to recover damages from the United States and its agents for the wrongful acts/omissions of its employees.

///

## SEVENTH CAUSE OF ACTION

**General Negligence**

89. Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

90. Plaintiff brings this claim against the United States under the Federal Tort Claims Act, based on acts and/or omissions of Defendant United States and Defendant Officers, while working in their official capacities. Defendants are employees of USA and BOP and at all relevant times were acting within the scope of their employment as uniformed federal employees.

91. At all times relevant herein, Defendants USA and BOP hired various correctional and/or administrative personnel at MDC, including but not limited to wardens, associate wardens, captains, lieutenants, unit managers, counselors, correctional officers, and investigators. At all times relevant herein, MDC personnel, including individually-named Defendants, held themselves out as correctional and/or administrative personnel with the knowledge, capacity, and ability to provide due care in accordance with standards of common, acceptable, and reasonable care to those incarcerated at MDC.

92. Defendants had a custodial duty, as well as an obligation under PREA and BOP policy, to protect its incarcerated inmates from foreseeable harm, including sexual assaults. This duty was non-delegable. Defendants had a general duty of care to Plaintiff to act as reasonable prudent persons would under similar circumstances. It was the duty of Defendants to maintain, operate, and control MDC as a safe and secure space for incarcerated people, and to protect incarcerated people from foreseeable harm inflicted by BOP personnel.

93. Defendants, individually or through its agents, servants, contractors, and/or employees acting within the scope of their employment, breached those duties by failing to supervise and operate MDC in a manner that would have prevented the sexual attacks on Plaintiff. Defendants knew or should have known about the ongoing sexual abuse of inmates occurring in its prisons; knew or should have known the foreseeability of placing in inmates in isolation with unsupervised staff, and the breach of duty by Defendant directly exposed

Plaintiff to an unreasonable risk of bodily injury and sexual assault. Defendants did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff in violation of federal regulations and BOP protocol.

94. The United States, through its employees also failed to train, retain, and supervise officers as well as monitor and investigate them.

95. BOP Officer Viera's employment at MDC was essential to his commission of the misconduct, which would not have happened absent his employment and privileges bestowed upon him by Defendants, as a representative of BOP, under the color and authority of law.

96. Defendant officers' conduct was grossly negligent as they showed complete disregard for rights and safety of Plaintiff, and it was foreseeable to MDC personnel that Plaintiff would be at risk of imminent serious harm, including sexual abuse, given the circumstances.

97. The United States' negligence in administering BOP, and MDC is a direct and proximate cause of Plaintiff's harm, particularly in light of the special relationship and the duty of care owed to Plaintiff. As a direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, psychological trauma, distress, anxiety, depression, loss of dignity and quality of life, as well as medical and economic injuries as a result of Defendants' conduct.

## EIGHTH CAUSE OF ACTION

### Neglect to Prevent Interference with Civil Rights

98. Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

99. Plaintiff brings this claim against the United States under the Federal Tort Claims Act, based on acts and/or omissions of Defendant United States and Defendant Officers, while working in their official capacities. Defendants are employees of USA and BOP and at all relevant times were acting within the scope of their employment as uniformed federal employees.

100. 42 U.S.C. §1986 provides in part that:

> *"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action…"*

101. On information and belief, at all times herein mentioned, Defendants and each of them knew, or should have known, that Plaintiff was being subjected to a deprivation of constitutional rights and were in the position, and had the duty and authority, to intervene to prevent the wrongdoing committed against Plaintiff by Defendants.

102. By virtue of the foregoing, Defendants, and each of them, acted in violation of 42 U.S.C. §1986.

103. Defendants, and each of them, engaged in fraud, oppression and/or malice and in conscious disregard of the rights and safety of others. At all times relevant hereto, Defendants were acting under the color of state law. Defendants knew or should have known of these rights at the time of the complained of conduct, as they were clearly established at that time. The acts or omissions of these Defendants, as described herein, deprived Plaintiff of her constitutional and statutory rights and caused her damages. The herein-described conduct by law enforcement officials shocks the conscience and offends the community's sense of decency.

104. Finally, as a direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

## NINTH CAUSE OF ACTION

### Deliberately Indifferent Policies, Practices, Customs, Training and Supervision in Violation of the Fourth and Fourteenth Amendments

105. Plaintiff realleges and incorporates herein by reference each and every allegation set forth above.

///

106. The Defendants in this action at all times relevant hereto were acting under the color of authority and color of state law.

107. Defendants knew or should have known of Plaintiff's protections and rights as they were clearly established at the time of the complained of conduct. The acts or omissions of these Defendants, as described herein, deprived Plaintiff of her constitutional and statutory rights.

108. Defendants knowingly developed and maintained policies, procedures, customs, and/or practices permitting the occurrence of the kinds of wrongs set forth herein, exhibiting deliberate indifference to widespread abuses in prisons. Defendants failed and refused to impartially and fully investigate, discipline, or prosecute peace officers who commit acts of felonious conduct against inmates to the fullest extent of the law, which were the moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein. Defendants' conduct resulted from a conscious or deliberate choice to follow a course of lawless action.

109. Defendants have created and tolerated an atmosphere of lawlessness, and have knowingly developed and maintained long-standing, agency-wide customs, law enforcement related policies, procedures, customs, practices, and failed to take prompt and meaningful preventative or remedial action, and/or failed to properly train and/or supervise its officers in a manner evidencing callous disregard for, and deliberate indifference to, the constitutional rights of Plaintiff and of the public.

110. In light of the duties and responsibilities of sworn correction officers, and the imbalance of power between officers and inmates, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights to citizens such as those described herein, that the USA and BOP's failure to provide such specialized training and supervision is deliberately indifferent to those rights.

111. Defendants' actions were intentionally carried out with the express purpose of causing Plaintiff to suffer harm, humiliation, mental anguish, and emotional and physical

distress. Defendants, and each of them, engaged in fraud, oppression and/or malice and in conscious disregard of the rights and safety of others. The conduct and actions of Defendants, and each of them, was wanton, reckless, malicious and willful, and were undertaken with reckless disregard and indifference to the rights and interests of Plaintiff, especially in light of the duty of care owed to Plaintiff. Finally, as a direct and proximate result of Defendants' actions and as a foreseeable consequence, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

## TENTH CAUSE OF ACTION

### Negligent Hiring, Supervision and Training

112. Plaintiff realleges and incorporates herein by reference each and every allegation set forth above.

113. At all times herein, USA and BOP employed the Defendant Officers who were under BOP's direct supervision and control when the wrongful acts described herein were committed. Defendants USA and BOP held its Defendant Officers out to the community as fit and competent agents of the BOP. The alleged acts occurred within the apparent and actual authority arising from the agency relationship with BOP. Said conduct was undertaken in the course and scope of BOP's employment relationship with the Defendant Officers, and on information and belief, the unconstitutional actions and/or omissions of Defendants, were pursuant to customs, policies, practices, and/or procedures of the BOP, which were directed, encouraged, allowed, and/or ratified by Defendants and other policy making officers.

114. The conduct as stated above was a foreseeable and well-known hazard within the BOP such that statutory protections were created within PREA. Defendants had an express duty, and assumed this duty, to protect and care for the safety, security, privacy and constitutional rights of Plaintiff. Defendants did breach that duty in the hiring, retention, training, reporting, investigating, reviewing, and/or supervising of the Defendant Officers, who were not adequately trained, controlled, assigned, evaluated, and/or disciplined in their roles as BOP Officers. Defendants knew or should have known that the Defendant Officers would

engage in the conduct herein alleged, but maintained a policy of inaction and an attitude of indifference. Accordingly, Defendants are vicariously liable for the negligent and wrongful conduct of their unsupervised Unit Officer Jose Viera, and those who made decisions in the care of Plaintiff.

115. At all times relevant hereto, Defendants were acting under the color of state law. Defendants knew or should have known of these rights at the time of the complained of conduct, as they were clearly established at that time. The acts or omissions of these Defendants, as described herein, deprived Plaintiff of her constitutional and statutory rights and caused her damages. The herein-described conduct by law enforcement officials shocks the conscience and offends the community's sense of decency.

116. Finally, as a direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

## **ELEVENTH CAUSE OF ACTION**

### **Intentional Infliction of Emotional Distress**

117. Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

118. Plaintiff brings this claim against the United States under the Federal Tort Claims Act, based on acts and/or omissions of Defendant United States and Defendant Officers, while working in their official capacities. Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as uniformed federal employees.

119. Defendant United States, individually or through its agents, servants, contractors, and/or employees, engaged in extreme and outrageous conduct by subjecting Plaintiffs to sexual acts while incarcerated in their custody, through the above-described acts and omissions.

120. Plaintiffs' injuries and damages were caused by intentional torts perpetrated by Defendants. Defendant United States is liable for intentional torts perpetrated by its agents,

including correctional officers, that occurred within the scope of their employment under color of federal law under 28 U.S.C. §2680(h).

121. In engaging in said conduct, Defendants acted intentionally, willfully, or recklessly, and/or with gross negligence, insofar as the conduct would foreseeably cause, and did cause, severe emotional distress and suffering for Plaintiff.

122. Defendants, and each of them, engaged in fraud, oppression and/or malice and in conscious disregard of the rights and safety of others. Defendants' actions were extreme, outrageous, and intentionally carried out with the express purpose of causing Plaintiff to suffer harm, humiliation, mental anguish, and emotional and physical distress. The conduct and actions of Defendants, and each of them, was wanton, reckless, and willful, and were undertaken with reckless disregard and indifference to the rights and interests of Plaintiff, especially in light of the duty of care owed to Plaintiff.

123. As a direct and proximate cause of Defendants' conduct, Plaintiff was hurt and injured in her health, strength, and activity, and sustained injury to her nervous system. Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, loss of close personal relationships, disgrace, humiliation, and loss of enjoyment of life, all of which injuries have caused and continue to cause Plaintiff great mental, physical, and nervous pain and suffering. Plaintiff is informed and believes and hereon alleges that those injuries may be permanent in nature. As a further direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

124. By reason of the injuries sustained as a result of the conduct of Defendants, and each of them, Plaintiff has been required to obtain, and has obtained, and is expected to continue to obtain, the services of health care professionals. Plaintiff has incurred and will incur medical expenses in connection with obtaining the same, and will necessarily be required to engage such services (psychological, psychiatric, mental health/counseling, etc.) for an indefinite period of time and shall continue to incur expenses in connection therewith. The

exact amount of Plaintiff's medical and related expenses is unknown at this time and Plaintiff will ask leave of Court to amend this Complaint to set forth the exact amount thereof when they have been ascertained.

125. At all relevant times, Defendants were acting under color of law by supervising, disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Plaintiffs within the scope of their employment for the United States

126. Plaintiff is entitled to recover damages from the United States and its agents for the wrongful acts/omissions of its employees.

**TWELVTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress**

127. Plaintiff realleges and incorporates herein by reference each and every allegation set forth above.

128. Defendants knew, or in the exercise of reasonable diligence should have known, that their conduct and failure to exercise due care would cause Plaintiff to suffer severe emotional distress, but nonetheless allowed and engaged in the conduct as alleged herein.

129. As a direct and proximate cause of Defendants' conduct, Plaintiff was hurt and injured in her health, strength, and activity, and sustained injury to her nervous system. Plaintiff has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, loss of close personal relationships, disgrace, humiliation, and loss of enjoyment of life, all of which injuries have caused and continue to cause Plaintiff great mental, physical, and nervous pain and suffering. Plaintiff is informed and believes and hereon alleges that those injuries may be permanent in nature. As a further direct and proximate result of Defendants' actions, the Plaintiff did in fact suffer serious and severe harm, humiliation, mental anguish, and emotional and physical distress as a result of Defendants' conduct.

130. By reason of the injuries sustained as a result of the carelessness and negligence of Defendants, and each of them, Plaintiff has been required to obtain, and has obtained, and is expected to continue to obtain, the services of health care professionals. Plaintiff has incurred

and will incur medical expenses in connection with obtaining the same, and will necessarily be required to engage such services (psychological, psychiatric, mental health/counseling, etc.) for an indefinite period of time and shall continue to incur expenses in connection therewith. The exact amount of Plaintiff's medical and related expenses is unknown at this time and Plaintiff will ask leave of Court to amend this Complaint to set forth the exact amount thereof when they have been ascertained.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them, as follows:

a. For a finding that Defendants, and each of them, violated Plaintiff's constitutional rights and that they are jointly and severally liable to Plaintiff for her injuries; and for an award of general damages in an amount to be proven at trial;

b. For all medical and incidental damages according to proof;

c. For all impairment of future earnings according to proof;

d. For an award - in addition to compensatory damages - of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar wrongful conduct in an amount according to proof;

e. For an award of litigation expenses to the fullest extent of the law, including costs of suit, reasonable attorney's fees, and pre-judgment interest; and,

f. For such other and further legal or equitable relief as the Court may deem just and proper.

Respectfully submitted,

Dated: November 6, 2025

Richard A. Madsen, Jr.
Attorney for Plaintiff J.P.